FILED
2026 Apr-02  AM 09:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| Arcadian Services, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| Michael D. Gordon, and | ) | |
| MDG CAB Holdings, LLC, | ) | |
| | ) | |
| *Defendants*. | ) | |

### VERIFIED COMPLAINT

Plaintiff Arcadian Services, LLC brings its verified complaint against Defendants Michael D. Gordon and MDG CAB Holdings, LLC under the Lanham Act, 15 U.S.C. § 1125(a), the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and Alabama law for trademark infringement, cybersquatting, and violation of Gordon's restrictive covenants with Arcadian Services.

### PARTIES

1.     Arcadian Services is an Ohio corporation whose principal place of business is 3109 Northington Court, Florence, Alabama 35630. Arcadian Services is a family owned and operated company focused on formulating and manufacturing car wash chemicals and distributing car wash equipment. Arcadian Services has used the trade name "Arcadian Services" in nationwide commerce since roughly 1982. Below are examples of the logos Arcadian Services uses to market its products:





2.    Gordon is an adult individual residing in Colorado. Upon information and belief, Gordon may be served at his principal residence at 10867 East 167th Place, Brighton, Colorado 80602. Gordon is a former consultant and distributor of Arcadian Services's products.

3.    MDG CAB Holdings, LLC ("MDG CAB") is a Colorado limited liability company that may be served via Gordon, its registered agent, at the same address. Upon information and belief, Gordon solely owns and operates MDG CAB. Upon further information and belief, Gordon and MDG CAB (collectively, "Defendants") do business as "Arcadian Chemistry Solutions," "Arcadian Services of Colorado," and "Bio-Tech Solutions." Below are examples of the logos Defendants use to market their products:







### JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question). Arcadian Services brings claims under the federal Lanham Act, 15 U.S.C. § 1125(a) and Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

5.      Defendants are subject to personal jurisdiction in Alabama under FED. R. CIV. P. 4(k)(1)(A) and ALA. R. CIV. P. 4.2(b) because Gordon consented to this Court's jurisdiction in his consulting agreement with Arcadian Services. The consulting agreement is attached hereto as **Exhibit 1**. Independently, Defendants have established sufficient minimum contacts with Alabama to be subject to suit here. Defendants have willfully infringed Arcadian Services's trademarks and breached his contract with Arcadian Services, causing Arcadian Services substantial harm in Alabama.

3

6.     Venue in this Court is proper because of the forum-selection provision in Gordon's consulting agreement with Arcadian Services. Independently, venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this lawsuit occurred here.

### FACTUAL ALLEGATIONS

7.     Commercial car washes typically use reclaimed water systems to collect wastewater for reuse in washing. This process helps reduce water consumption and costs.

8.     Before water is reused, it must be filtered and treated to remove sludge, eliminate order, and reduce turbidity. This process is known as "reclaiming" water.

9.     Arcadian Services has developed a proprietary suite of chemical formulae designed to treat wastewater as part of the reclamation process. These formulae, which Arcadian Services considers its trade secrets, use biological processes to (1) reduce or eliminate odors and reduce turbidity in wastewater so it is suitable for reuse and (2) reduce the amount of sludge that accumulates in the bottom of reclaimed water tanks. This helps car wash operators lower their water bills by allowing them to reuse wastewater. It also reduces the frequency with which car wash operators must have their reclaimed water tanks cleaned.

10.    Arcadian Services markets this wastewater treatment product line under the trademark "Reclaim Defender." Arcadian Services has used the "Reclaim Defender" mark in nationwide commerce since 2023.

11.    Arcadian Services's Reclaim Defender product line consists of three specific products branded as "Reclaim Defender 1" (including subvariants "1F" and "1G") "Reclaim Defender 2" (including subvariants "2F" and "2G"), and "Reclaim Defender ALLN1."

12.    Arcadian Services has invested significant time and money in developing its Reclaim Defender products, employing a team of chemists and consultants for research, development, and testing.

13.    In addition to Arcadian Services's scientific research and development, Arcadian Services has made substantial investments in marketing Reclaim Defender to customers throughout the United States, Mexico, Canada, and Saudi Arabia, including via trade shows, advertising, speaking engagements, and other business development efforts. Arcadian Services also employs distributors across the country to market and sell its products to customers.

14.    Arcadian Services uses the business name "Arcadian Services" in its sales and marketing activities in general and the "Reclaim Defender" trademark in marketing this particular line of products.

15. Arcadian Services's relationship with Gordon began in 2018 when he started purchasing Arcadian Services's products for his own use as a customer. Gordon liked the products so much that in 2019, he began distributing Arcadian Services's products.

16. At that time, Gordon also began consulting for Arcadian Services on a limited basis, assisting with product development and marketing.

17. In 2022, at Gordon's request, Arcadian Services greatly expanded his consulting role. This expanded role came with a fivefold increase in Gordon's monthly consulting fees.

18. To formalize Gordon's expanded role, the parties entered into a consulting agreement effective April 22, 2022. *See* Ex. 1. The consulting agreement contains restrictive covenants, which may be enforced via suit for equitable relief. *See id.* ¶¶ 2, 3, 4.

19. The nonsolicitation provisions in Gordon's consulting agreement prohibit him from soliciting, diverting, enticing away, calling on, or interfering with Arcadian Services's customers for 24 months post-separation. *See* Ex. 1 ¶ 2(a)(v).

20. The nondisclosure provisions in Gordon's consulting agreement prohibit him from using or disclosing "Confidential Information," which is defined to include "client lists and records," "marketing data," "trade secrets," and "proprietary technology." *See* Ex. 1 ¶ 3(a) & (b).

6

21.     These restrictive covenants were necessary to protect Arcadian Services's business interests in light of Gordon's expanded role with the company. Gordon was now responsible for product development and testing as well as generating business for Arcadian Services. Reclaim Defender was the primary product Gordon was responsible for developing, testing, and marketing.

22.     Gordon received confidential information about Arcadian Services's proprietary technology he wouldn't otherwise have known. Through Arcadian Services, Gordon obtained the expertise and know-how of Arcadian Services's products, including Reclaim Defender, that would enable him to develop and market a competing product to customers if restrictive covenants were not in place.

23.     Gordon also received Arcadian Services's confidential customer and vendor lists and developed close customer relationships on Arcadian Services's dime.

24.     Gordon resigned from Arcadian Services as a consultant in December 2025. But Gordon remained a distributor of Arcadian Services's products, including Reclaim Defender.

25.     Unbeknownst to Arcadian Services, however, Gordon and his company created their own, knock-off version of Reclaim Defender and began selling it under the same trademark to Arcadian Services's customers alongside Arcadian Services's authentic Reclaim Defender products.

26. Since the termination of Gordon's consulting agreement in December 2025, Arcadian Services has learned that Defendants surreptitiously created their own line of chemicals for treating reclaimed water and are selling them under the "Reclaim Defender" trademark. These products include "Bio-SludgeBane," "Bio-Vorax," "Bio-SulfurShield," and "Bio-CitriClean."

27. Upon information and belief, Defendants have used and are continuing to use confidential and proprietary information learned through Gordon's relationship with Arcadian Services to develop and market these competing products.

28. Arcadian Services did not create the product names "Bio-SludgeBane," "Bio-Vorax," "Bio-SulfurShield," or "Bio-CitriClean." Nor did it authorize Defendants to sell its Reclaim Defender products under these names.

29. Below is an excerpt from an advertisement Defendants are apparently using to sell their counterfeit products, which are prominently labeled as "Reclaim Defender Products":

8



The full ad is attached hereto as **Exhibit 2**.

30.    Notably, the knock-off product names "Bio-SludgeBane," "Bio-Vorax," and "Bio-SulfurShield" are immediately followed by their Arcadian Services-authorized counterpart—"(1F or 1G)", "(2F or 2G)", and "(ALLN1)"—making it appear to customers as if the two sets of products (the real and the fake) are equivalent. *See* Ex. 2.

31.    Another ad visible on Defendants' website, biotechsolutions.ai, shows photos of Arcadian Services's authorized Reclaimed Defender product—*with*

9

*Arcadian Services's business logo*—next to a written description of Defendants' knock-off "Bio-Vorax" and "Bio-SludgeBane":



## Two Step Process

### Step One : Inoculation

**Reclaim Defender - Bio-Vorax**
Biologically clarifies reclaim water, significantly reducing COD and BOD levels. With improved dissolved oxygen levels. H2S gas is metabolically blocked from being produced as **Bio-SludgeBane** begins to consume solids at the bottom of the separator tank.

**Reclaim Defender - Bio-SludgeBane**
Anaerobic bacteria consumes organic compounds and car wash chemistry. Provides reduced TDS, consumes organic materials and greatly improving  water clarity..

10



The full ad is attached hereto as **Exhibit 3**.

32.    Other ads on Defendants' website similarly show photos of Arcadian Services's genuine Reclaim Defender 1G & 1F, Reclaim Defender 2G & 2F, and Reclaim Defender ALLN1 alongside Defendants' knock-off "Bio-Vorax," "Bio-SludgeBane," and "Bio-SulfurShield":

11



**Icon –**
**Bio-Vorax**
**Product -**
**Reclaim Defender 1G & 1F**







**Icon –**
**Bio-SludgeBane**

**Product -**
**Reclaim Defender 2G & 2F**












Icon –
**Microbe Bio-SulfurShield**

Product -
**Reclaim Defender ALLN1**



*See* **Exhibits 4, 5, & 6**.

33.     The ads in Exhibits 2–6 all appear designed to make the customer believe the two sets of products (the authorized and the knock-off) are the same.

34.     Also appearing on Defendants' website is a Safety Data Sheet (an OSHA-required document for chemical compounds used in workplace settings) for Defendants' knock-off "CitriClean" product. The Safety Data Sheet identifies the product as "Reclaim Defender CitriClean" and the manufacturer as "Arcadian Chemistry Solutions, LLC"—a d/b/a name of MDG CAB:

14



### Section 1: IDENTIFICATION

**Product Identifier:** Reclaim Defender  CitriClean
**Product Number** is based on Product Size. For more information request a/refer to brochure.
**Manufacturer:** Arcadian Chemistry Solutions,LLC
**Address:** 10867 E 167th Pl, BLDG B
          Brighton, CO 80602
  **Phone:** (7800) 289-7627, 237
  **Emergency:** (800) 289-7627, 237
  **Outside USA:** (800)
  289-7627,237
**Recommended Use:** Specially formulated for grease degradation in industrial, institutional and municipal line and trap systems.

The full Safety Data Sheet is attached hereto as **Exhibit 7**.

35.    The Safety Data Sheet further identifies "Reclaim Defender 1"—Arcadian Services's genuine product—as a "Common Name [or] Synonym[]" of the knock-off product (*see* Ex. 7):

### Section 3: COMPOSITION/INFORMATION ON INGREDIENTS

**Chemical Name:** NA
**Common Name & Synonyms:** Reclaim Defender 1
**Chemical Abstracts Service (CAS) number and unique identifiers:** NA
**Impurities & Stabilizing Additives:** NA
**Chemical Name and Concentration of all ingredients (classified as health hazard):** NA

36.    Another "CitriClean" ad on Defendants' website shows the packaged knock-off product with Defendants' business logo—Arcadian Chemistry

15

Solutions—alongside Arcadian Services's "Reclaim Defender" trademark, which is prominently displayed on the label:







The full ad is attached hereto as **Exhibit 8**.

16

37.     It further appears that Defendants have registered the domain name reclaimdefender.ai so that when the URL is typed into a browser, the user is redirected to Defendants' own website, biotechsolutions.ai, where there is information about Defendants' phony products.

38.     Compounding the likelihood of confusion is Defendants' use of the trade names "Arcadian Chemistry Solutions" and "Arcadian Services of Colorado" to market their counterfeit Reclaim Defender products. Arcadian Services has never licensed its trade name to Defendants for the purpose of marketing their own, pirated version of Arcadian Services's products. Such use plainly creates a likelihood of confusion between Arcadian Services's products and Defendants'.

39.     Independent of Defendants' trademark infringement, upon information and belief, Defendants have used confidential customer and technical information received in the course of Gordon's employment with Arcadian Services to market competing products to the following Arcadian Services customers: Brilliant Wash Solutions, Cannon Express Car Wash, Fresh Fenders Car Wash, CBML Enterprises, Finish Line Car Wash, Flash Wash, El Jebel Car Wash, Black Bear Car Wash, Diamond Car Wash, Flash Wash, Autowash, and Mark Sarikov.

40.     These actions are in violation of Gordon's nonsolicitation and nondisclosure agreements with Arcadian Services.

17

41. Upon information and belief, Defendants' willful trademark infringement and breach of Gordon's restrictive covenants are ongoing and will continue unless this Court enters an injunction. If Defendants are not enjoined, Arcadian Services faces the loss of customers, goodwill, and market position for which money damages are inadequate.

### COUNT ONE: VIOLATION OF THE LANHAM ACT § 43(A), 15 U.S.C. § 1125(A) (PASSING OFF OR REVERSE PASSING OFF)

42. Through the continued and exclusive use of the "Reclaim Defender" mark, Arcadian Services has acquired valuable trademark rights.

43. Defendants have knowingly and intentionally used in interstate commerce Arcadian Services's "Reclaim Defender" trademark to deceive customers into thinking they were purchasing Arcadian Services's genuine Reclaim Defender products when they were really purchasing Defendants' knock-off version.

44. Alternatively, Defendants have knowingly and intentionally used in interstate commerce their own marks, including "Bio-Tech Solutions," "Arcadian Chemistry Solutions," "Bio-SludgeBane," "Bio-Vorax," "Bio-SulfurShield," and "Bio-CitriClean," to deceive customers into thinking they were purchasing Gordon's products when they were really purchasing Arcadian Services's genuine Reclaim Defender products.

45.     Defendants' actions are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Arcadian Services with Defendants or the origin, sponsorship, or approval of the parties' respective goods.

46.     Arcadian Services has been damaged by Defendants' actions.

## COUNT TWO: VIOLATION OF THE LANHAM ACT § 43(A), 15 U.S.C. § 1125(A) (INFRINGEMENT OF ARCADIAN TRADEMARK)

47.     Through the continued and exclusive use of the "Arcadian Services" trade name, Arcadian Services has acquired valuable trademark rights.

48.     Defendants have knowingly and intentionally used in interstate commerce the marks "Arcadian Chemistry Solutions" and "Arcadian Services of Colorado" in connection with their own goods, which marks are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Arcadian Services with Defendants or the origin, sponsorship, or approval of the parties' respective goods.

49.     Arcadian Services has been damaged by Defendants' actions.

## COUNT THREE: VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT, LANHAM ACT § 43(D), 15 U.S.C. § 1125(D)

50.     Through the continued and exclusive use of the "Reclaim Defender" mark, Arcadian Services has acquired valuable trademark rights.

19

51.    Defendants have registered, trafficked in, or used the domain name reclaimdefender.ai, which is identical or confusingly similar to Arcadian Services's "Reclaim Defender" mark.

52.    Arcadian Services's "Reclaim Defender" mark was distinctive at the time Defendants registered the domain name reclaimdefender.ai.

53.    Defendants' actions were committed with a bad-faith intent to profit from Arcadian Services's "Reclaim Defender" mark.

54.    Arcadian Services has been damaged by Defendants' actions.

### COUNT FOUR: BREACH OF CONTRACT
### (NONSOLICITATION AGREEMENT)

55.    Gordon's consulting agreement is a valid, binding contract with nonsolicitation provisions that are reasonable in time and scope and supported by a protectable interest.

56.    Arcadian has fully performed its obligations under the consulting agreement.

57.    Upon information and belief, Gordon, individually and via MDG CAB, has breached and continues to breach his nonsolicitation agreement by soliciting, diverting, enticing away, calling on, or interfering with Arcadian Services's customers so that they would buy competitive products from Defendants instead of Arcadian Services.

58.    Arcadian Services has been damaged by Defendants' actions.

## COUNT FIVE: BREACH OF CONTRACT
### (NONDISCLOSURE AGREEMENT)

59.     Gordon's consulting agreement is a valid, binding contract with nondisclosure provisions that prohibit Gordon from using or disclosing Arcadian Services's confidential information.

60.     Arcadian has fully performed its obligations under the consulting agreement.

61.     Upon information and belief, Gordon, individually and via MDG CAB, has breached and continues to breach his nondisclosure agreement by using or disclosing Arcadian Services's confidential customer and technical information gained in the course of his employment to market and sell his own products to customers.

62.     Arcadian Services has been damaged by Defendants' actions.

### PRAYER FOR RELIEF

Arcadian Services respectfully requests an award of compensatory damages, punitive damages, statutory damages, Defendants' profits, attorney's fees, interest, and costs. Arcadian Services further requests a preliminary and permanent injunction, declaratory relief, and any other legal or equitable relief the Court deems appropriate.

Dated: April 1, 2026

Respectfully submitted,

/s/ Hunter W. Pearce

Scott Burnett Smith
Ala. Bar No. 3615-T82S
Hunter W. Pearce
Ala. Bar No. 1115-G46R
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, AL 35801-4900
(256) 517-5100
(256) 517-5200 (fax)
ssmith@bradley.com
hpearce@bradley.com

*Attorneys for Arcadian Services, LLC*

**DEFENDANTS TO BE SERVED VIA PROCESS SERVER**

22

4926-4750-1712.1

## VERIFICATION

I, Kipp Kofsky, who being sworn, deposes and says under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the Factual Allegations of the foregoing Verified Complaint, except where stated on information and belief, are true and correct to the best of his present knowledge, information, and belief.

Sworn and subscribed on this __26th__ day of March, 2026.

_____
Kipp Kofsky
President
Arcadian Services, LLC